Erin Rose Ronstadt, SBN 028362
Clayton Warren Richards, SBN 029054
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
clayton@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dion McKissack, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Hartford Life and Accident Insurance Company, an ERISA benefit plan fiduciary, | |
| Defendant. | |

For his claims against The Hartford Life and Accident Insurance Company, an ERISA benefit plan fiduciary ("Hartford" or "Defendant"), Plaintiff Dion McKissack ("Mr. McKissack" or "Plaintiff") alleges as follows:

## *Jurisdiction, Venue, and Parties*

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. The Group Long Term Disability Plan for Employees of Blue Cross and Blue Shield of Arizona, Inc. ("The Plan") is a purported ERISA benefit plan established and maintained by Blue Cross Blue Shield of Arizona, Inc. ("BCBS") for the benefit of its employees.

3. Mr. McKissack was a participant and beneficiary of the Plan as an employee of BCBS.

4. BCBS employed Mr. McKissack as a Strategic Relations Executive ("SRE") at the time he left work in August 2015. The job of SRE is a highly-skilled executive position

1   requiring years of experience in account management, sales, strategic relationships, and vast

2   health insurance knowledge.

3       5.   Under the Plan, Hartford insures BCBS employees for long-term disability

4   ("LTD") benefits pursuant to an insurance policy denoted by policy number GLT-402674

5   (the "Policy").

6       6.   Hartford is a third-party claims administrator for LTD claims under the Plan.

7       7.   Hartford is a Plan fiduciary.

8       8.   BCBS is the Plan Sponsor, Plan Administrator, a plan fiduciary, and employer.

9       9.   Hartford has a duty to administer the Plan prudently and in the best interests of

10  all Plan participants and beneficiaries.

11      10.  At the time Mr. McKissack sought LTD benefits under the Plan, Hartford

12  administered claims for BCBS under the Plan, acted on behalf of the Plan, and acted as an

13  agent of BCBS and/or the Plan to make final decisions regarding the payment of disability

14  benefits for the Plan and to administer the Plan.

15      11.  Mr. McKissack currently resides in Maricopa County, Arizona and has been a

16  resident of Maricopa County at all times since becoming a Plan participant.

17      12.  Hartford has its principal place of business in the State of Connecticut.

18      13.  Defendant Hartford is licensed and authorized to do business in Maricopa

19  County, Arizona, and resides and is found within Maricopa County within the meaning of

20  the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

21      14.  This Court has jurisdiction over the subject matter of this action under ERISA,

22  29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

23      15.  Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28

24  U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *Mr. McKissack's Disability*

27      16.  Mr. McKissack suffered from a cerebrovascular accident in 2014.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-2-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

17.   Diagnostic imaging confirmed a right-sided infarct, or an area of dead tissue, in structures of Mr. McKissack's brain known as the putamen and internal capsule, and surrounding petechial hemorrhages, or bleeding of tiny blood vessels in the brain.

18.   Upon discharge from the hospital, Mr. McKissack established with a neurologist for symptoms of excessive daytime sleepiness, nonrestorative sleep, changes in emotional state, and new-onset cognitive difficulties.

19.   The neurologist diagnosed Mr. McKissack with a sub-cortical stroke, mild cognitive impairment post-stroke, non-restorative sleep, and other impairments.

20.   An electroencephalogram or "EEG," an electrodiagnostic test recording the electrical activity of the brain, revealed findings consistent with encephalopathy, or brain disease.

21.   An independent neuropsychologist, Dr. Amy Knapp, noted Mr. McKissack suffered from a variety of symptoms including excessive daytime sleepiness, extreme fatigue, generalized weakness, short-term memory difficulties, decreased motivation, lack of concern/worry, flat affect, increased difficulties with writing and typing, and reduced mental, physical, and social activity levels.

22.   Importantly, she noted, "Mental health is not thought to be the primary cause of [Mr. McKissack's] cognitive dysfunction."

23.   On March 28, 2014, Dr. Knapp performed a Comprehensive Neurological Evaluation.

24.   Dr. Knapp's testing revealed Mr. McKissack suffered from "profound impairment" in the area of "[c]omplex visuospatial construction and planning, [or] rule learning during an executive functioning task."

25.   Mr. McKissack's scores reflected impairment in a range of other functional categories.

26.   Dr. Knapp noted that Mr. McKissack's responses during the psychological evaluation were "suggestive of no clinically significant psychopathology," including no clinical suggestion of depression or anxiety.

27.  Dr. Knapp noted testing results indicated a cognitive decline "primarily related to the stroke . . . ."

28.  Dr. Knapp stated, "No clinically significant psychological concerns were found to be the cause of [Mr. McKissack's] cognitive dysfunction."

29.  In late 2015, Mr. McKissack established with his current neurologist, Dr. Constantin Moschonas.

30.  In Dr. Moschonas's treating notes from late 2015 and early 2016, he noted, "[Mr. McKissack] has evidence of a cerebral infarct involving the putamen and basal ganglia on the right side. The right basal ganglia is involved in the patient's use of his left hand. **He is left handed.** The stroke affects his writing. Also the basal ganglia is more likely than not playing a role in his cognitive dysfunction, ability and thought processing and thought organization. There is probably also involvement of some thalamic elements to account for difficulties that he is experiencing. I doubt that he will be able to get to his previous high level functioning in order to executed [*sic*] and responsible for high dollar transactions. I recommend [Mr. McKissack] consider going on short-term disability and transitioning to long-term disability." [Emphasis added.]

31.  Dr. Moschonas characterized Mr. McKissack's depression as "situational," and merely recommended a short-term selective serotonin reuptake inhibitor medication, or "SSRI," to treat it.

32.  February 2018 EEG results continued to show findings "consistent with cerebral dysfunction."

33.  Medical records from 2020 show that Mr. McKissack's cognition remained a "major issue" affecting speech output, language abilities, and his ability to multi-task and focus.

34.  Dr. Moschonas noted in January 2020 that Mr. McKissack continued to suffer from "left-sided strength loss changes in tone reduced rapid finger movements as noted on his examination," and that "[n]ausea disquilibrium and vomiting are still a major issue that he deals with on a regular and daily basis."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-4-

35. Dr. Moschonas noted, "Sadly, [Mr. McKissack's symptoms] have not resolved as expected and more likely than not they will be a permanent part of his residual stroke deficits."

36. Importantly, Mr. McKissack suffers from several other medical conditions for which he receives specialized treatment and which contribute to his Disability.

***Plan Language***

37. Under the Policy, Disability is defined as follows: " You are prevented from performing one or more of the Essential Duties of 1) Your Occupation during the Elimination Period; 2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and 3) after that, Any Occupation."

38. Under the Policy, Disability must result from "accidental bodily injury," "sickness," "Mental Illness," "Substance Abuse," or pregnancy.

39. The Policy defines "Essential Duty" as a job function that "1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed. Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty."

40. "Your Occupation" is defined as "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."

41. "Any Occupation" is defined as "any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of 1) the product of Your Indexed Predisability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit."

42. Under the Policy, "Mental Illness" is defined as "a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders [("DSM")], published by the American Psychiatric Organization. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

43.   The Policy definition of Mental Illness does not include the following mental disorders as outlined in the DSM: 1) Mental Retardation; 2) Pervasive Developmental Disorders; 3) Motor Skills Disorder; 4) Substance-Related Disorders; 5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or 6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

44.   The Policy's mental-nervous limitation provides that, "If you are Disabled because of: 1) Mental Illness; 2) any condition that may result from Mental Illness; 3) alcoholism; or 4) the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance; then subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits" (the "Mental-Nervous Limitation").

45.   The Policy limits payment of benefits to "a total of 24 months for all such disabilities during Your lifetime."

### Mr. McKissack's LTD Benefits

46.   Mr. McKissack stopped working due to his Disability on August 21, 2015.

47.   He applied for, received, and exhausted short-term disability benefits with Hartford before Hartford transitioned his claim to the LTD claims unit.

48.   In March 2016, Hartford approved Mr. McKissack's LTD claim effective February 17, 2016.

49.   Hartford's approval was based on Mr. McKissack's Disability due to symptoms and impairments resulting from his stroke.

50.   Hartford's nurse consultant noted on March 16, 2016 that the results of Mr. McKissack's neuropsychological testing suggested his cognitive decline was the result of his stroke.

51.   In August 2016, the Social Security Administration ("SSA") also awarded Mr. McKissack's claim for Social Security Disability benefits ("SSDI").

52.   Mr. McKissack underwent psychometric testing during the SSDI application and review process.

-6-

53.  This testing was performed by consultative psychologist, Carol McLean, Ph.D., in July 2016.

54.  Dr. McLean administered psychometric testing indicating Mr. McKissack fell within the sixth percentile rank for Immediate Memory; the fourth percentile rank for Delayed Memory; the seventh percentile rank for Auditory Memory; and the eighth percentile rank for Visual Memory.

55.  Dr. McLean noted, "Results of the assessment indicate [Mr. McKissack] is experiencing a mild neurocognitive disorder due to stroke without any behavioral disturbances."

56.  Mr. McKissack was approved for ongoing LTD benefits into the Any Occupation phase of Disability as early as September 2017.

57.  His treating providers repeatedly endorsed and supported his Disability claim throughout this period.

58.  In February 2018, Dr. Moschonas opined Mr. McKissack had indefinite physical limitations and restrictions which would preclude even sedentary work.

59.  In response to the question of whether Mr. McKissack suffered from a "psychiatric/cognitive impairment," Dr. Moschonas answered yes and explained Mr. McKissack was "coping [with] cognitive dysfunction [due] to stroke."

60.  Dr. Nasser Djavadi, Mr. McKissack's treating psychiatrist, supported Mr. McKissack's claim in statements in December 2018 and May 2019.

61.  In May 2019, Dr. Djavadi clarified Mr. McKissack's primary medical condition was a stroke resulting in left-sided weakness, gait and balance difficulties, writing difficulties, and cognitive difficulties.

62.  In February 2019, Dr. Moschonas noted Mr. McKissack's condition was "unchanged"; that he exhibited hemiparesis and "poor strength [and] balance [due to] stroke"; and that he continued to suffer from "low memory" and low "information retention."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-7-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

63.   Despite the continuing support of Mr. McKissack's treating specialists, Hartford's nurse case manager opined in March 2019 that Mr. McKissack's lack of function was not substantiated by the medical records.

64.   Hartford sent a letter to Dr. Moschonas dated April 2, 2019 requesting that he quantify Mr. McKissack's physical restrictions and limitations, but Dr. Moschonas never replied.

65.   The Hartford nurse case manager called Dr. Moschonas's office to ensure he received the letter and was considering it, but both calls were made after Dr. Moschonas's office had already closed.

66.   Mr. McKissack's spouse contacted Hartford on April 1, 2019 to inquire about the status of Mr. McKissack's claim, but Hartford did not notify her it was trying to reach Dr. Moschonas and did not request her help in doing so.

67.   On April 9, 2019, the Hartford nurse case manager referred Mr. McKissack's claim to an independent medical examiner ("IME").

68.   The nurse case manager asserted that "the records going forward do not give a clear indication of cognitive status," but Hartford never referred Mr. McKissack to some other qualified examiner to assess his cognitive function.

69.   Instead, Hartford arranged to have Mr. McKissack examined by Dr. Brian McCrary—a local physician notorious for his biased IME reports.

### Hartford Relied on a Biased IME

70.   On April 24, 2019, Mr. McKissack attended an IME with Brian McCrary, D.O., M.P.H.

71.   Dr. McCrary has performed examinations at the behest of long-term disability insurance carriers for many years.

72.   Upon information and belief, Dr. McCrary is a preferred source for these examinations because he consistently writes reports adverse to the interests of disability claimants.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

73.   Upon information and belief, in these reports, Dr. McCrary often accuses disability claimants of lying, malingering, or other deceitful behavior.

74.   Hartford has a custom of using Dr. McCrary to generate evidence supporting the termination or limitation of LTD claims.

75.   Dr. McCrary's examination of Mr. McKissack on April 24, 2019 lasted approximately ten minutes.

76.   During the interview, Dr. McCrary carelessly rebuffed the notion Mr. McKissack's cognitive limitations could cause his Disability.

77.   Dr. McCrary also admitted, however, that Mr. McKissack's neurological and cognitive complaints were not within his areas of expertise.

78.   Nevertheless, Hartford had apparently requested Dr. McCrary perform a Montreal Cognitive Assessment, or "MOCA exam," with his report.

79.   Unsurprisingly, Dr. McCrary concluded Mr. McKissack had full-time physical work capacity, including the ability to sit constantly, stand or walk for one hour at a time and up to four hours in day, lift weights of up to 30 pounds for as long as one-third of a workday; and use his upper extremities without limitation.

80.   Dr. McCrary assigned no cognitive limitations.

81.   Dr. McCrary's opinions are patently belied by the objective record.

82.   Dr. McCrary's opinion regarding Mr. McKissack's ability to use his upper extremities is especially egregious in light of the repeated notes, references, and clinical findings of left-sided hemiparesis in the file; the fact Mr. McKissack's treating physicians repeatedly noted his difficulties with using his upper extremities, especially his dominant left hand, for writing and other basic functions; and Mr. McKissack's recurring reports of left-sided weakness throughout his correspondence with Hartford and to his medical providers.

83.   Dr. McCrary even had the effrontery to assert that Mr. McKissack's Disability was the product of his own false perception that was being "facilitated by his [treating] providers . . . ."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

84.   Hartford promptly faxed Dr. McCrary's IME report to Drs. Moschonas, Roberts (Mr. McKissack's hematologist/oncologist), and Schectman (Mr. McKissack's rheumatologist) for comment.

85.   When Mr. McKissack's spouse called on May 7, 2019, the Hartford claims examiner notified her the IME concluded that Mr. McKissack had some capacity to work, but she refused to provide Mr. McKissack's spouse a copy of the report while the claim was open.

86.   That same day, Mr. McKissack's spouse called Hartford again to ensure that Hartford was taking into account his significant cognitive issues.

87.   Mr. McKissack's spouse informed the claims examiner that Dr. McCrary dismissed Mr. McKissack's cognitive complaints as a "joke."

88.   Two days later, on May 9, 2019, Dr. Moschonas replied to Hartford's letter stating he did not agree with the IME findings.

89.   On May 10, 2019, Hartford received a response from Dr. Roberts stating he agreed with the IME findings.

90.   On May 14, 2019, the Hartford claims examiner called Dr. Schectman's office to explain that her response was not required and that Hartford provided the report only as a courtesy.

91.   While Mr. McKissack's claims examiner at Hartford recommended the termination of his claim, Hartford delayed the decision to explore Mr. McKissack's cognitive limitations.

92.   Also, in a revised version his letter dated July 1, 2019, Dr. Roberts clarified his position regarding the McCrary IME, noting that "[Mr. McKissack] is seen for hemochromatosis and polcythemia in [Dr. Roberts'] practice," and that Hartford should "defer to other specialists to obtain [an] opinion on the [IME] report."

93.   Although Dr. Roberts clarified his position regarding Mr. McKissack's functionality, Hartford failed to acknowledge this.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

94. A July 22, 2019 internal note reflects Hartford intended to send Dr. Djavadi a "clarification letter" to see if "cognitive/psychiatric severity is precluding [Mr. McKissack] from global functioning."

95. In his reply to Hartford's lengthy July 24, 2019 questionnaire, Dr. Djavadi answered yes to the question of whether Mr. McKissack was impaired from performing any work activity from a psychiatric standpoint, but clarified this was due to "cognitive difficulties."

96. In the form letter requesting a response, Hartford insisted Dr. Djavadi provide "specific details" and "objective test" examples that supported his conclusion that Mr. McKissack suffered from a cognitive impairment.

97. Hartford's form stated, "If [no details or objective tests] are provided we will conclude that there are no cognitive impairments."

98. In response, Dr. Djavadi noted Mr. McKissack's inability to focus or multi-task and his short-term memory impairment.

99. On August 26, 2019, a psychiatric and neurological consultant, Mark A. Whaley, M.D. conducted a peer review of Mr. McKissack's claim at Hartford's behest.

### Hartford Mischaracterized a Peer Reviewer's Report to Support Hartford's Preferred Outcome

100. In his August 26, 2019 report, Dr. Whaley expressed agreement with Dr. Djavadi, Mr. McKissack's psychiatrist, that "the combination of psychiatric symptomology, ***together with a chronic neurological impairment***, fully support total work restriction for this unfortunate man [(Mr. McKissack)] from August 2015 to the present." [Emphasis added.]

101. Dr. Whaley described Mr. McKissack's prognosis for a return to work as "extremely poor to nonexistent."

102. Dr. Whaley noted "consistent" neurological examinations showing "substantial motor system damage," which was supported by brain imaging.

-11-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

103.   Dr. Whaley stated the diagnostic imaging "also supports widespread vessel damage, **which is likely contributing, if not totally causing**, what was identified by neuropsych[ological] testing in March 2019." [Emphasis added.]

104.   Importantly, Dr. Whaley indicated, "This testing ruled out significant psychological issues that might be contributing here."

105.   Dr. Whaley concluded "it is not conceivable" that Mr. McKissack could perform job functions including dealing publicly with customers, concentrating on tasks, multitasking, having sufficient working memory to complete tasks, and deescalating adverse social situations.

106.   In an August 29, 2019 internal note, Hartford's behavioral health case manager, upon reviewing Dr. Whaley's August 26, 2019 report, stated, "[W]e now have two different peers that contradict reports regarding cognitive impairments. [Behavioral Health Case Manager] to discuss with [Case Team Lead]."

107.   Hartford's August 30, 2019 internal note documenting this conversation reads as follows: "[Case Team Lead] recommends [Behavioral Health Case Manager] utilize Resolution tracker, internal quality, *In the review [Dr. Whaley] stated multiple times that 'this is outside of my area of expertise' but went on to disagree with the Occ[upational] Med[icine] IME provider, whose expert opinion [is] based [on] a hands on evaluation of the claimant occurred [*sic*]. Please have [Dr. Whaley] answer the questions based on his area of expertise and include the primary psychiatric [diagnosis] causing impairments per his area of expertise, as the request was for a psychiatric review."

108.   The Hartford claims manager then replied back to MLS Group—the third-party vendor responsible for arranging Dr. Whaley's peer review—and requested Dr. Whaley make the requested changes.

109.   Dr. Whaley issued another report dated September 5, 2019.

110.   The September 5, 2019 Whaley report is mostly identical to the August 26, 2019 Whaley report, but it does contain a few material changes.

-12-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

111.   Dr. Whaley's August 26, 2019 report stated, "The most appropriate diagnosis code would have to be the initiating condition-Right Subcortical CVA in 2014 #I163.50."

112.   Dr. Whaley's September 5, 2019 report stated, "The most appropriate diagnosis code would have to be the initiating condition-Right Subcortical CVA in 2014 #I163.50. **The primary psychiatric diagnosis is Major Depression. #F33.1.**" [Emphasis added.]

113.   Dr. Whaley's August 26, 2019 report did not include a primary psychiatric diagnosis.

114.   Dr. Whaley modified his September 5, 2019 report to include the primary psychiatric diagnosis in two of his answers.

115.   Dr. Whaley's September 5th report deleted the following paragraph from two of his answers: "The only data that contradicts [my] assessment is the IME that the occupational medicine specialist performed in April 2019. Although it is outside my area of expertise, it is surprising that [Dr. McCrary] found minimal deficits noted on his examination, in the face of such consistent neurological evaluations that are contradictory. [Mr. McKissack's] most recent neurological piece of data was submitted in February 2019 in which there was reported finding of left hemiparesis which interfered with all physical activities. [Dr. McCrary] does note however that this man has been disabled for a long time and in his opinion this has been facilitated by his providers. The only way to resolve this outlying opinion would be to do a neurological IME. However, it is my opinion that even if he has full functional physical capacities, his mental ones stemming from depressed [and] labile mood and anxiety would substantially interfere with his being able to perform the kind of job he was working at back in 2014. Of course the 5 years of a dependent level of functioning would be another hurdle for this man to overcome were he to return to work."

116.   Each of Dr. Whaley's reports support Mr. McKissack's ongoing physical Disability under the Plan.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

117.   In each report, Dr. Whaley stated, "I strongly doubt that any different psychiatric intervention would restore [Mr. McKissack] to functional capacities."

118.   Dr. Whaley is certified by the American Board of Psychiatry and Neurology and is well within his expertise to opine regarding Mr. McKissack's cognitive and neurological limitations.

119.   Dr. Whaley asserted that the only way to "resolve [Dr. McCrary's] outlying opinion would be to do a neurological IME," but Hartford conducted no such IME.

120.   Instead, Hartford proceeded with a decision to limit Mr. McKissack's benefits under the LTD Policy's Mental-Nervous Limitation, which would allow it to pay a maximum of only 24 months of LTD benefits.

121.   In a Hartford internal note dated September 25, 2019, the behavioral health case manager mischaracterized the evidence to support the conclusion Mr. McKissack's cognitive limitations resulted from his mental health impairments.

122.   The behavioral health case manager stated the "Neuro IME concluded no cognitive impairments due to medical/organic cause, -Neuropsych Testing 2019 concluded cognitive changes due to depression/anxiety, -Psychiatric MCR concluded cognitive deficits due to Dx: Major Depressive D/O."

123.   To begin, however, Hartford never commissioned any neurological IME.

124.   The only "cognitive" assessment performed by an IME was the MOCA exam performed by Dr. McCrary, who downplayed or disregarded Mr. McKissack's cognitive complaints during the examination and who is unqualified to assess Mr. McKissack's cognitive and neurological limitations.

125.   There was no neuropsychological testing performed in 2019.

126.   The psychiatric peer reviewer also never concluded that the cognitive deficits were the result of Mr. McKissack's psychiatric condition.

127.   On September 26, 2019, Hartford issued a letter terminating Mr. McKissack's LTD benefits based on a physical Disability, but continuing to pay his LTD claim under the Mental-Nervous limitation (the "Denial").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

128. Hartford based its decision on the opinions of Drs. McCrary and Whaley.

129. On March 24, 2020, Mr. McKissack, through counsel, notified Hartford of his appeal with the intent to supplement with additional evidence (the "Appeal").

130. On June 22, 2020, Mr. McKissack, through counsel, supplemented the Appeal with additional evidence, including a March 2, 2020 letter from Mr. McKissack's neurologist, Dr. Moschonas; an April 17, 2020 letter from Mr. McKissack's psychiatrist, Dr. Djavadi; a June 12, 2020 Vocational Assessment to Perform Any Occupation by an independent consultant; up-to-date medical records; Mr. McKissack's Social Security Disability file; medical literature pertaining to Mr. McKissack's medication conditions; correspondence; and other documents.

**Hartford Ignored the Opinions of Mr. McKissack's Treating Specialist Physicians and Independent Experts During the Review Process**

131. In his letter dated March 2, 2020 submitted with the Appeal, Dr. Moschonas strongly criticized Hartford's decision.

132. Dr. Moschonas stated, for instance, "Clearly, Hartford [L]ife and [A]ccident [I]nsurance has not looked at Mr. McKissack's medical history. [Hartford has] failed to read any of my notes, and they have failed to review [Mr. McKissack's] medical records."

133. Regarding the nature of Mr. McKissack's Disability, Dr. Moschonas stated plainly, "[Mr. McKissack] suffered an acute cerebral infarct. In layman's terms he suffered a STROKE. A stroke is not mental illness."

134. Dr. Moschonas proceeded to describe Mr. McKissack's cognitive difficulties which he described as "significant cognitive demise."

135. Dr. Moschonas explained, "The damage to the basal ganglia is the etiology in his cognitive dysfunction. This also has produced dysfunction in [his] left hand. It causes him to have difficulty writing."

136. Regarding Mr. McKissack's prognosis, Dr. Moschonas stated, "This is the best that [Mr. McKissack] will ever be."

137.   Dr. Moschonas stated Mr. McKissack's secondary anxiety and depression were "not a primary cause of his disability."

138.   Dr. Moschonas concluded Mr. McKissack is incapable of any full-time work.

139.   Dr. Moschonas stated, "Trying to put this vulnerable individual [(Mr. McKissack)] in a work setting will significantly disrupt any kind of treatment that we are trying to maintain to minimize the risk of future strokes."

140.   In a letter dated April 17, 2020, Dr. Djavadi expressed similar conclusions.

141.   In summary, Dr. Djavadi stated, "My opinion based upon my lengthy treatment history with Mr. McKissack is that he is not disabled due to mental illness as he had no preexisting emotional or mental disorders prior to the stroke, but from the residual physical and cognitive symptoms resulting from a cerebrovascular accident he suffered in 2014."

142.   Dr. Djavadi noted Mr. McKissack's myriad physical and cognitive symptoms, including left-sided hemiparesis, decreased cognition, and short-term memory deficits, and Mr. McKissack's several other medical conditions contributing to his Disability, including psoriasis and psoriatic arthritis, polycythemia, deep veinous thrombosis, hypertensive cardiovascular disease, and obstructive sleep apnea.

143.   Dr. Djavadi stated, "Although Mr. McKissack suffers from psychiatric symptoms, such as anxious or depressed mood, his disability is not the result of those symptoms. His disability is the result of the stroke-which has caused longstanding physical and cognitive deficits-in addition to the physical diagnoses listed above."

144.   The independent vocational consultant also concluded Mr. McKissack could not perform any occupation due to cognitive symptoms including decreased concentration, short-term memory loss, lack of executive functioning, slowed processing speed, intermediate memory, delayed memory, visual memory, and auditory memory, and low perceptual reasoning.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-16-

145. The vocational consultant's expertise and experience includes "assisting brain injury survivors [to] return to work as part of [a] comprehensive neurorehabilitation team under the direction of [a] neuropsychological clinical director since 2006, [and] ongoing."

146. The vocational consultant criticized the vocational assessment upon which Hartford relied, noting that Hartford's vocational consultant failed to consider Mr. McKissack's cognitive limitations.

147. The vocational consultant described this as an "unethical practice."

148. The updated medical records submitted with the Appeal provide further objective support for Mr. McKissack's ongoing physical Disability under the Plan.

149. Dr. Moschonas's updated records noted Mr. McKissack's continuing difficulty with residual stroke symptoms, both physical and cognitive.

150. Dr. Roberts, Mr. McKissack's treating hematologist and oncologist, noted Mr. McKissack suffered a balance-related fall that resulted in a broken clavicle and an emergency room visit.

151. Medical records submitted with the Appeal also included a January 2020 visit for acute occlusive thrombi in Mr. McKissack's left femoral, popliteal, posterior tibial, and peroneal veins.

152. Mr. McKissack's rheumatologist noted ongoing clinical abnormalities related to his psoriasis and psoriatic arthritis.

153. Mr. McKissack's treating primary care physician, Dr. Donald Cunningham, noted daily nausea, vomiting, an unstable gait, significant chronic pain, and positive findings upon examination.

154. In response to this tome of evidence, Hartford referred Mr. McKissack's claim to yet another file reviewer, Dr. David F. Lang.

155. In his July 31, 2020 report, Dr. Lang opined there were no "medically supported restrictions and limitations" from September 2019 to present.

156. He characterized Mr. McKissack's "self-reported symptoms" as "out of proportion to the documented objective clinical findings."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

157.  Citing Mr. McKissack's "very busy schedule with all his doctor's visits," his "regular" exercise, and activities of daily living, Dr. Lang opined Mr. McKissack had full-time, sustainable work capacity for a normal 40-hour work schedule.

158.  On September 28, 2020, Mr. McKissack replied with yet even more evidence supporting his physical and cognitive Disability, including the report of an independent functional capacity evaluation ("FCE") supporting no physical work capacity, and a written verification of those findings by Dr. Moschonas.

159.  In response to Dr. Lang's opinion that Mr. McKissack was regularly exercising, Mr. McKissack also provided records of his gym visits.

160.  The independent FCE concluded, based on a full battery of physical tests, that Mr. McKissack could not perform his own past work or any other kind of sedentary work.

161.  In a letter dated September 23, 2020, Dr. Moschonas endorsed these findings "without reservations."

162.  Dr. Moschonas reiterated his opinion Mr. McKissack has limitations from his stroke, and that "[w]ishing this is not the case as Dr. Lang does in his report from Ohio is just that 'a wish.' I am sure [Mr. McKissack] would like to wish his deficits away. Sadly in a stroke setting this is not possible."

163.  On October 29, 2020, Hartford provided Mr. McKissack with even more adverse evidence upon which it intended to rely, including an addendum file review from Dr. Lang; a new file review from Krishna Padiyar, M.D., an occupational and preventive medicine specialist; and a supplemental vocational report from its Rehabilitation Case Manager, Tresa LeVasseur.

164.  In his addendum, Dr. Lang summarily disregarded the independent FCE findings.

165.  Dr. Lang asserted, "[The FCE] does not represent or provide objective clinical information that can be relied on," and that "the FCE can be fraught with inaccuracy dependent upon the effort put forward by the examinee."

-18-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

166.   Dr. Lang stuck to his prior conclusion that Mr. McKissack suffered from no physical or cognitive functional impairment.

167.   Dr. Padiyar, Hartford's occupational and preventive medicine reviewer, assigned only limited restrictions to Mr. McKissack.

168.   Dr. Padiyar stated Mr. McKissack would be limited to no overhead reaching and only occasional reaching at shoulder level with the left shoulder, and that he could lift, carry, push, or pull weights of no greater than 10 pounds with his left arm.

169.   Dr. Padiyar stated Mr. McKissack would be off work one day due to his hospitalization for deep veinous thrombosis.

170.   Ms. LeVasseur, Hartford's rehabilitation case manager, relied exclusively on the de minimus limitations assigned by Dr. Padiyar to conclude Mr. McKissack could perform a host of high-earning, skilled, sedentary jobs.

171.   In a letter dated January 18, 2021, Mr. McKissack responded with additional evidence supporting his ongoing physical and cognitive Disability, including a January 13, 2021 addendum report by the independent FCE evaluator, an updated January 18, 2021 Vocational Assessment to Perform Any Occupation from the independent vocational consultant, a December 16, 2020 Verification of Functional Capacity Evaluation by Mr. McKissack's treating rheumatologist, Dr. Joy Schectman, and updated medical records.

172.   All of these reports supported Mr. McKissack's ongoing physical and cognitive Disability under the Plan.

173.   The independent FCE examiner noted the "severe functional deficits" he previously outlined based on the results of his examination and emphasized that Mr. McKissack gave full effort during testing.

174.   The FCE examiner also noted Drs. Lang and Padiyar's "preconceived and outdated belief systems regarding the importance of FCEs."

175.   The independent vocational consultant who evaluated Mr. McKissack during the review process rebutted Ms. Levasseur's report on the basis she again failed to consider Mr. McKissack's significant cognitive deficiencies.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

176.   In a letter verifying the outcome of the FCE, Mr. McKissack's treating rheumatologist, Dr. Schectman, indicated Mr. McKissack has "a very complex disease process and has failed Remicade therapy."

177.   Dr. Schectman noted Mr. McKissack's psoriatic arthritis "has impacted his health causing enthesitis, premature arthrosclerosis and chronic pain."

178.   Dr. Schectman stated Mr. McKissack could not return to his previous job or any other gainful employment.

179.   In response to this evidence, Hartford again deferred to the opinions of its hired paper-reviewing consultants, Drs. Padiyar and Lang, whose conclusions from their prior reports remained unchanged.

180.   On February 12, 2021, Mr. McKissack responded, pointing out the several prior reports and letters of Mr. McKissack's treating specialist physicians and independent consultants, which Hartford continued to ignore.

181.   Six days later, on February 18, 2021, Hartford finally upheld its decision to limit benefits under the policy (the "Final Denial").

182.   Per the Final Denial and Hartford's decision to limit Mr. McKissack's benefits under the Mental-Nervous Limitation under the Policy, Mr. McKissack is not entitled to LTD benefits beyond September 24, 2021.

183.   Mr. McKissack cannot perform the material duties of his Occupation or Any Occupation and therefore comes within the definition of Disability under the Plan.

184.   Mr. McKissack exhausted his administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of LTD Plan Benefits)
### (Hartford)

185.   All other paragraphs are incorporated by reference.

186.   The Plan is an Employee Welfare Benefits Plan as defined by ERISA, 29 U.S.C. § 1002.

-20-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

187. The Plan represents LTD coverage and a promise to provide LTD benefits until Mr. McKissack is no longer Disabled under the terms of the Plan.

188. Mr. McKissack continues to be Disabled from his Occupation or Any Occupation according to the terms of the Plan.

189. Mr. McKissack has claimed the benefits under the Plan to which he is entitled.

190. Mr. McKissack reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until he reaches his Normal Retirement Age, which is age 67, or until he was no longer Disabled.

191. Despite the coverage of Mr. McKissack's Disability, Hartford and the Plan improperly limited LTD benefits in breach of the Plan and ERISA.

192. Hartford's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

193. Hartford repeatedly ignored or played down the substantial objective evidence Mr. McKissack submitted supporting his ongoing physical and cognitive Disability, including the opinions of his longstanding treating physicians and independent experts.

194. Hartford failed to properly consider the opinions of Mr. McKissack's treating and examining physicians and providers.

195. Hartford failed to adequately explain why it credited their physician-reviewers and examiners over Mr. McKissack's treating physicians and independent experts.

196. In managing Mr. McKissack's claim, Hartford reversed course without explanation, changing its conclusion Mr. McKissack's cognitive difficulties were the result of a physical disease process in order to limit the payment of benefits under the Policy.

197. Upon information and belief, Hartford used in-house reviewers and contract consultants in evaluating Mr. McKissack's claim because it knew that these reviewers' and

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1   consultants' recommendations would be unfavorable for the continuation of Mr.

2   McKissack's benefits.

3   198. The peer reviewers and independent examiner Hartford relied upon

4   arbitrarily reached their opinions based on insufficient evidence or investigation.

5   199. Hartford intentionally gathered evidence to stack the deck in its favor and

6   against Mr. McKissack.

7   200. When Hartford received the August 2019 report from Dr. Whaley, which

8   undermined its goal-oriented attempt to limit its liability on Mr. McKissack's claim, it

9   requested that Dr. Whaley amend that report and then misconstrued the amended report

10   in a manner that would support its pre-determined conclusion Mr. McKissack's Disability

11   falls under the Mental-Nervous Limitation.

12   201. Hartford did not properly consider all of the available evidence when

13   terminating Mr. McKissack's benefits.

14   202. Drs. Lang and Padiyar, Hartford's medical consultants during the review

15   process, both arbitrarily dismissed the FCE findings despite the FCE examiner's

16   conclusions that the FCE results were valid and that Mr. McKissack provided full effort

17   during testing.

18   203. Hartford's consultants had no legitimate basis to discredit the FCE, but they

19   did so anyway.

20   204. Hartford failed to conduct a full and fair review.

21   205. Hartford misstated medical evidence for its own financial benefit, e.g., it

22   excessively relied on biased medical reviews provided by in-house medical consultants or

23   outside consultants it routinely contracts with through third-party intermediaries, such as

24   the MLS Group or the Exam Coordinators' Network.

25   206. In the end, Hartford relied exclusively on the opinions of its own experts, all

26   of whom, save one, never personally examined or even spoke to the claimant.

27   207. Hartford's lone examiner, Dr. McCrary is a biased IME consultant who is

28   notoriously anti-claimant.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

208.  Although the Policy states Hartford has discretion with respect to claims and appeals and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

209.  Even if BCBS properly delegated discretionary authority to Hartford, in light of Hartford's wholesale and flagrant procedural violations of ERISA, Mr. McKissack should be entitled to de novo review. *See Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

210.  Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. McKissack is informed and believes that Hartford makes claims decisions based on the claims resources and financial risk it faces on certain claims.

211.  Hartford routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

212.  Hartford routinely denies or limits otherwise compensable claims to avoid setting aside additional reserves. To accomplish this goal, it "investigates" claims for the purpose of creating biased evidence to justify a denial or a limitation of benefits. It does this, in part, by determining segmentation or classification to pre-determine its financial exposure.

213.  The practice of segmentation helped Hartford increase its profitability.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

214.    On information and belief, Hartford decides in advance how long claims should be paid, often to the test change or change in definition of Disability under a Policy, and then takes claims management measures to ensure those goals are met.

215.  Hartford relied on findings that constitute "clearly erroneous findings of fact" to deny Mr. McKissack's benefits.

216.  Hartford abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Hartford ignored the inaccuracies or created new reasons for denial.

217.  Upon information and belief, Hartford provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

218.  In limiting Mr. McKissack's LTD benefits under the Policy, Hartford disregarded evidence that Mr. McKissack's conditions had not changed or improved.

219.  Hartford has no evidence that Mr. McKissack's conditions changed or improved since it determined that he was physically Disabled under the LTD Policy.

220.  Hartford engaged in other procedural irregularities, which it did to serve its own financial best interests.

221.   Hartford unreasonably withheld relevant documents throughout the entire claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents and information, despite numerous requests.

222.   Hartford did not respond to Mr. McKissack's representative's first request for relevant documents for nearly six months.

223.   Hartford's response to a request for relevant documents after the Final Denial did not include, among other things, proper disclosure of internal claims notes.

224.   Hartford's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrate its abuse of discretion and improper claims handling.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

225.   On information and belief, Hartford engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

226.   Mr. McKissack alleges upon information and belief that Hartford has a parsimonious claims handling history.

227.   Hartford failed to conduct a "meaningful dialogue" regarding Mr. McKissack's claim.

228.   Although Hartford routinely shared the findings of its Peer Reviewing physicians with Mr. McKissack under the guise of having a "meaningful dialogue," Hartford would routinely rely on its own evidence without duly considering the opinions of Mr. McKissack's treating physicians.

229.   All of the evidence submitted with Mr. McKissack's Appeal addressed the opinions of Hartford's consultants, but Hartford ignored Mr. McKissack's evidence.

230.   Under the de novo standard of review, to be entitled to benefits, Mr. McKissack need only prove by a preponderance of the evidence that he is Disabled.

231.   Even under the abuse of discretion standard of review, Hartford abused its discretion, because its decision limiting Mr. McKissack's disability benefits was arbitrary and capricious and caused or influenced by Hartford's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

232.   Mr. McKissack is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process, and also regarding the effects of Hartford's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision limiting Mr. McKissack's LTD claim.

233.   Under the de novo standard of review, Mr. McKissack is entitled to discovery regarding, among other things, the credibility of Hartford's medical reviews and

Hartford's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

234.  Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. McKissack is entitled to recover any benefits due under the terms of the Plan, and to enforce his rights under the Plan.

235.  Mr. McKissack is entitled to reinstatement of and ongoing entitlement to any other employee benefits that could be terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the status quo ante before Hartford wrongfully limited LTD benefits.

236.  Pursuant to 29 U.S.C. § 1132(g), Mr. McKissack is entitled to recover his attorneys' fees and costs incurred herein.

237.  Mr. McKissack is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Hartford)**

238.  All other paragraphs are incorporated by reference.

239.  Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

240.  Hartford is a fiduciary and owes fiduciary duties to Plan participants, including Mr. McKissack.

241.  Under 29 U.S.C. § 1104(a), Hartford is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man or

-26-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

woman acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

242.  Under ERISA, which is founded in trust principles, Hartford is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

243.  In multiple ways throughout the administration of Mr. McKissack's claim, Hartford breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

244.  Hartford, as a pattern and practice, improperly and proactively applies its Mental-Nervous Limitation to claims in an effort to limit its financial liability and reserves.

245.  Hartford deliberately mischaracterized the nature of Mr. McKissack's Disability as "mental" based on specious evidence.

246.  On information and belief, Hartford's classification of physical disability claims using a Mental-Nervous Limitation in its policies is driven by its institutional objective of increasing corporate profitability, not fair claims handling.

247.  On information and belief, Hartford instructs or incentivizes certain employees to terminate or limit fully-insured LTD claims and appeals based on bias or its financial interests.

248.  Hartford relied on the opinions of biased contract consultants to deny benefits.

249.  Hartford ignored, or summarily disregarded, the opinions of Mr. McKissack's treating specialists and independent experts.

250.  Hartford ignored the significant evidence Mr. McKissack submitted on Appeal of his claims, including an objective FCE supporting the conclusion he cannot physically work, the express endorsement of that FCE from two of his treating specialist physicians, the letters of several treating doctors supporting his claim for benefits, the independent vocational reports, and updated medical records.

251.  District and Circuit courts have considered functional capacity evaluations to be compelling and probative evidence of Disability. *See Stiltz v. Metropolitan Life Ins. Co.*,

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

244 Fed. Appx. 260, 264-65 (11th Cir. 2007) ("MetLife's final decision considered both the subjective and the objective evidence in Stiltz's file, and MetLife found that the objective evidence in the [FCE] as the more credible evidence of Stiltz's ability to work."); *see Bari v. Cont'l Cas. Co.*, 02 CIV. 5628 (CBM), 2004 WL 1124685, at *3 (S.D.N.Y. May 20, 2004) ("[FCE] is a procedure designed 'to define an individual's functional abilities or limitations in the context of safe, productive work tasks.'") (quoting Phyllis M. King, et al., A Critical Review of Functional Capacity Evaluations, 78 Physical Therapy 852, 853 (Aug.1998)). *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015) ("A [FCE] 'is generally a reliable and objective method of gauging the extent one can complete work-related tasks.'") (*quoting Caesar v. Hartford Life & Acc. Ins. Co.*,464 Fed. Appx. 431, 325 (6th Cir. 2012); *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1046 (8th Cir. 2011); *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) ("Hartford denied [the] claim based specifically on 'the results of [FCE], which indicated that Schexnayder was capable of performing light sedentary work.'"); *Saffon v. Wells Fargo & Co. Long Term Dis. Plan*, 522 F.3d 863 (9th Cir. 2008) (identifying FCE as objective evidence); *Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. App'x 971, 977-78 (11th Cir. 2008) (collecting cases) (noting plan administrators "routinely rely on FCEs" to make benefit eligibility decisions); *Buckardt v. Albertson's, Inc.*, 221 Fed. Appx. 730, 736 (10th Cir. 2007); *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir. 2004); *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002).

252.  Instead of duly considering this evidence, Hartford instead relied, arbitrarily and capriciously, on the opinions of peer review consultants and who never examined or even spoke to Mr. McKissack, and one independent medical examiner.

253.  Hartford also failed to adequately distinguish the favorable Social Security disability determination despite well-established case law showing such determinations must be duly considered.

254.  Hartford's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty because Hartford's claims handling was discharged imprudently

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1   and caused Mr. McKissack serious harm that cannot be recovered under 29 U.S.C. §

2   1132(a)(1)(B).

3      255.   Upon information and belief, Hartford's arbitrary and capricious claims

4   handling is the direct and proximate result of a companywide effort to improve its group

5   disability loss ratio by denying or terminating more claims.

6      256.   Hartford put Mr. McKissack on a segmented path that, after significant delays

7   and manipulation, limited Hartford's ultimate liability in paying out benefits. Mr.

8   McKissack.

9      257.   Hartford focused on "segmenting" the claim and gathering biased evidence,

10   caring less about fairly investigating the claim for liability.

11     258.   To the extent that Hartford's denial of benefits caused Mr. McKissack harm

12   unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29

13   U.S.C. § 1132(a)(3).

14     259.   On information and belief, Hartford instructs and/or incentivizes certain

15   employee(s) to terminate fully-insured LTD claims and appeals based on bias or its

16   financial interests.

17     260.   Mr. McKissack is informed and believes that Hartford's employees are

18   trained in administering claims in the best interests of Hartford, not Plan participants.

19     261.   Instead of fully and fairly reviewing the medical evidence, Hartford

20   unreasonably limited Mr. McKissack's claim based on unreliable evidence.

21     262.   Hartford's failure to act prudently and in the best interests of Mr. McKissack

22   is a breach of fiduciary duty requiring appropriate equitable relief following discovery of

23   Hartford's conduct as it relates to Mr. McKissack's claim.

24     263.   Mr. McKissack is informed and believes that Hartford has targeted claims

25   under the Plan, including Mr. McKissack's, which is a breach of fiduciary duty.

26     264.   Based on the facts of this case, Mr. McKissack has "other equitable relief"

27   available to him in several forms, because the relief available under 29 U.S.C. §

28

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1132(a)(1)(B) does not make Mr. McKissack whole for his losses from Hartford's breaching conduct.

265.  The Court has broad discretion to fashion appropriate relief to make Mr. McKissack whole and should mold the relief necessary to protect the rights of the participants.

266.  Mr. McKissack is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

267.  He is entitled to enjoin any act or practice by Hartford that violates ERISA or the Plan or to seek other appropriate equitable relief that is traditionally available in equity.

268.  Hartford should be enjoined from limiting Mr. McKissack's Disability benefits under the aforementioned Mental-Nervous Limitation in the Policy, absent the express conclusion of his treating physician on a future date that his Disability is caused by a Mental Illness.

269.  Legal remedies are inadequate to prevent Hartford from arbitrarily reclassifying Mr. McKissack's Disability under the aforementioned Mental-Nervous limitation, thereby limiting its future liability on otherwise payable claims. Hence, equitable relief is appropriate.

270.  Mr. McKissack would suffer irreparable harm should Hartford attempt to limit its liability using the Mental-Nervous Limitation in the Policy. The Policy allows for continued benefits, assuming Mr. McKissack's ongoing eligibility, until full retirement age, or for another seven years. Hartford's improper categorization of Mr. McKissack's Disability as mental-nervous in nature would allow it to deprive Mr. McKissack of Disability benefits to which he might otherwise be eligible.

271.  Hartford will be unjustly enriched as a result of its breach of fiduciary duty violations because it intends to wrongfully withhold Mr. McKissack's benefits for its own profit.

272.  Hartford engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

273. Hartford acted with malice and in bad faith against Mr. McKissack, which constitutes a violation of its fiduciary obligations.

274. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. McKissack by Hartford's breach of fiduciary duty.

275. As a direct and proximate result of the breaches of fiduciary duty, Mr. McKissack has suffered and will suffer actual, significant financial harm and has incurred financial expense.

**WHEREFORE**, on all claims, Mr. McKissack prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.      Any past LTD benefits under the terms of the Plan;

B.      Clarifying and determining Mr. McKissack's rights to future benefits under the terms of the Plan;

C.      For any other benefits Mr. McKissack may be entitled to receive under the Plan due to his Disability;

D.      All other equitable relief, including injunctive relief, that is proper as a result of Hartford's breaches of fiduciary duties;

E.      An award of Mr. McKissack's attorneys' fees and costs incurred herein;

F.      An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.      For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 10th day of June, 2021.

RONSTADT LAW, PLLC

By: _s/ Erin Rose Ronstadt_
Erin Rose Ronstadt
Clayton W. Richards
Attorneys for Plaintiff

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050